**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Sonja Marie Howell, ) | No. CV-12-1024-PHX-LOA |
| ) | |
| Plaintiff, ) | **ORDER** |
| ) | |
| vs. ) | |
| ) | |
| ) | |
| Carolyn W. Colvin, Commissioner of the ) | |
| Social Security Administration, ) | |
| ) | |
| Defendant. ) | |
| ) | |
| ) | |

Plaintiff seeks review of the Social Security Administration Commissioner's decision denying her application for disability insurance benefits and supplemental security income. The parties, who have expressly consented in writing to proceed before the undersigned Magistrate Judge per 28 U.S.C. § 636(c), have filed briefs in accordance with the Rules of Practice ("Local Rules " or "LRCiv") 16.1. (Docs. 10, 14) After review of the record, briefing and applicable law, the decision of the Commissioner is affirmed.

**I. Procedural Background**

In April 2008, Plaintiff filed applications for Social Security Disability Insurance Benefits and Supplemental Security Income under Titles II and XVI, respectively, of the Social Security Act. *See* 42 U.S.C. §§ 401-433 and §§ 1381-1383c. (AR[1] 138-152) Plaintiff

---

[1] Citations to "AR" are to the administrative record.

1  was 39 years old when she filed the applications and she has an eleventh grade education.
2  (AR 139, 176) Plaintiff also claims to have completed two semesters of community college
3  despite not graduating from high school. (AR 41) Plaintiff reported in the applications she
4  was rendered unable to work due to a disabling condition beginning on March 20, 2007, and
5  that she remains disabled. (AR 139, 146) Plaintiff has identified fibromyalgia, degenerative
6  disc disease, depression, asthma and migraines as the conditions that limit her ability to work.
7  (AR 51-53,164)

8  Plaintiff's applications were denied by the Social Security Administration ("SSA")
9  on August 18, 2008. (AR 74-77) Her request for reconsideration was denied on February 13,
10 2009. (AR 85-92) At Plaintiff's request, AR 94, a hearing was held on July 16, 2010, before
11 Administrative Law Judge ("ALJ") Earl C. Cates, Jr. (AR 31-69) In a decision dated August
12 16, 2010, the ALJ ruled Plaintiff is not entitled to disability benefits because she "has not
13 been under a disability within the meaning of the Social Security Act from March 20, 2007,
14 through the date of this decision." (AR 15, 15-24)

15 Plaintiff filed a Request for Review of Hearing Decision/Order on October 7, 2010.
16 (AR 10) On March 22, 2012, the Appeals Council denied Plaintiff's request for review of
17 the ALJ's decision. (AR 1-3) As a result of the denial, the ALJ's decision became the final
18 decision of the Commissioner of the SSA. (AR 1)

19 On May 16, 2012, having exhausted the administrative review process, Plaintiff
20 sought judicial review of the Commissioner's decision by filing a Complaint in this District
21 Court pursuant to 42 U.S.C. § 405(g). (Doc. 1) On October 1, 2012, Plaintiff filed an
22 Opening Brief pursuant to LRCiv 16.1, in which she seeks a remand for an award of
23 disability benefits or, alternatively, a remand for further administrative proceedings. (Doc.
24 23) On October 31, 2012, Defendant filed an Opposition to Plaintiff's Opening Brief. (Doc.
25 24) Plaintiff filed a Reply Brief on November 16, 2012. (Doc. 25)

26
27

**II. Applicable Legal Standards**

  **A. Standard of Review**

  A district court must affirm the ALJ's findings if they are supported by substantial evidence and are free from reversible error. *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *Marcia v. Sullivan*, 900 F.2d 172, 174 (9th Cir. 1990). Substantial evidence is more than a scintilla, but less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Reddick*, 157 F.3d at 720. In determining whether substantial evidence supports the ALJ's decision, a district court considers the record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusions. *Reddick*, 157 F.3d at 720; *Tylitzki v. Shalala*, 999 F.2d 1411, 1413 (9th Cir. 1993). The ALJ is responsible for resolving conflicts, ambiguity, and determining credibility. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). "If the evidence can reasonably support either affirming or reversing the Secretary's conclusion, the court may not substitute its judgment for that of the Secretary." *Reddick*, 157 F.3d at 720-21.

  **B. Sequential Evaluation Process**

  To be eligible for Social Security disability benefits, a claimant must show an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(a); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). The claimant bears the initial burden of proving disability. 42 U.S.C. § 423(d)(5); *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). A five step procedure is used to evaluate a disability claim:

  In step one, the Secretary determines whether a claimant is currently engaged

3

in substantial gainful activity. If so, the claimant is not disabled. 20 C.F.R. § 404.1520(b). In step two, the Secretary determines whether the claimant has a "medically severe impairment or combination of impairments," as defined in 20 C.F.R. § 404.1520(c). If the answer is no, the claimant is not disabled. If the answer is yes, the Secretary proceeds to step three and determines whether the impairment meets or equals a "listed" impairment that the Secretary has acknowledged to be so severe as to preclude substantial gainful activity. 20 C.F.R. § 404.1520(d). If this requirement is met, the claimant is conclusively presumed disabled; if not, the Secretary proceeds to step four. At step four, the Secretary determines whether the claimant can perform "past relevant work." 20 C.F.R. § 404.1520(e). If the claimant can perform such work, she is not disabled. If the claimant meets the burden of establishing an inability to perform prior work, the Secretary must show, at step five, that the claimant can perform other substantial gainful work that exists in the national economy. 20 C.F.R. § 404.1520(f).

*Reddick*, 157 F.3d at 721.

## III.  ALJ Decision

Applying the five-step procedure in this case, the ALJ determined Plaintiff has not engaged in substantial gainful activity since March 20, 2007, the alleged onset date of her disabling condition. (AR 17) The ALJ found Plaintiff has the following "severe" impairments within the meaning of the regulations: fibromyalgia, degenerative disc disease of L4-L5, asthma, and depression. (*Id.*) The ALJ determined, however, that Plaintiff does not have an impairment or combination of impairments that meets or medically equals a "listed" impairment.[2] (*Id.*) As a result, the ALJ assessed Plaintiff's residual functional capacity[3] ("RFC"). (AR 19-22)  The ALJ determined Plaintiff has the RFC to perform a range of sedentary to light work as defined in 20 C.F.R. § 404.1567(a), (b) and § 416.967(a), (b). (AR

---

[2] On this issue, the ALJ stated, "The record does not support the existence of any functional limitations and or diagnostic test results that would suggest that the severity of the impairments meet or equal the criteria of any specific listing. In addition, no treating or examining physician has reported findings that either meet or are equivalent in severity to the criteria of any listed impairment, nor are such findings indicated or suggested by the medical evidence of record." (AR 18)

[3] The term "residual functional capacity" means the most an individual can do after considering the effects of physical and/or mental limitations that affect the ability to perform work-related tasks. *See* 20 C.F.R § 404.1545(a)(1-2).

19) He found Plaintiff is able to frequently lift eight to ten pounds and occasionally lift fifteen to twenty pounds; sit at least thirty minutes at a time; stand at least ten to fifteen minutes at a time; and walk for one block at a time. (*Id.*) The ALJ further found Plaintiff requires a job that permits "the sit/stand option throughout an 8-hour workday with customary breaks," and does not require bending, twisting and stooping, among other limitations. (*Id.*)

In addition, the ALJ determined Plaintiff is capable of performing her past relevant work in telephone sales, a job that utilizes the sit/stand option. (AR 22) He further found there are other jobs existing in the national economy Plaintiff can perform, including parking lot cashier and paramutual ticket seller. (AR 22-23) Based on these findings, the ALJ concluded Plaintiff has not been under a "disability," as defined in the Social Security Act, from the alleged date of onset through the date of the ALJ's decision. (AR 24) Consequently, the ALJ ruled Plaintiff is not entitled to disability insurance benefits or supplemental security income. (*Id.*)

**IV. Analysis**

Plaintiff contends in her opening brief the Commissioner's decision should be reversed and the case remanded for an award of benefits. Plaintiff argues the ALJ erred by purporting to rely on the opinion of a non-examining state agency reviewing psychologist, when the examining psychologist's opinion, on which the ALJ also claimed to rely, established disabling limitations. Plaintiff also argues the ALJ erred by rejecting Plaintiff's symptom testimony in the absence of clear and convincing reasons for doing so. In the responsive brief, Defendant disputes each of Plaintiff's arguments and contends the administrative decision is supported by substantial evidence and free of harmful legal error.

**A. Alleged Error in Relying on Non-Examining State Agency Reviewer**

Plaintiff argues that even though the ALJ stated he gave "great weight" to the examining psychologist's assessment, he failed to consider the assessment as a whole, which

1 indicates Plaintiff would have difficulty performing certain activities without interruptions from psychologically based symptoms. Plaintiff contends the non-examining state agency reviewer's opinion, to which the ALJ also assigned "great weight," is inconsistent with the examining psychologists's assessment in that it states Plaintiff would be able to perform those activities without any stated difficulties. Plaintiff argues the ALJ erred by improperly relying on the non-examining psychologist's opinion and failing to fully consider the examining psychologist's assessment.

The medical opinions of three types of medical sources are recognized in Social Security cases: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (non-examining physicians)." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). Examining physicians' opinions carry more weight than those of non-examining physicians. *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001); 20 C.F.R. § 404.1527(c)(1). An examining physician's uncontradicted opinion may be rejected only for clear and convincing reasons supported by substantial evidence in the record. *Lester*, 81 F.3d at 830-31. Even if the examining physician's opinion is contradicted, an ALJ may not reject an examining physician's opinion without setting forth "specific and legitimate reasons" supported by substantial evidence in the record. *Id.* The opinion of a non-examining physician is not a specific and legitimate reason for rejecting an examining physician's opinion. *Id.* at 831. The ALJ is responsible for resolving conflicts in medical testimony. *Thomas v. Barnhart*, 278 F.3d 947, 956-57 (9th Cir. 2002); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999); *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).

**1. Examining Psychologist**

Clinical Psychologist, Melissa L. Finch, Ph.D., examined Plaintiff on June 28, 2008 and prepared a Psychological Report along with a Psychological/Psychiatric Medical Source Statement. (AR 462-466) In the Medical Source Statement, Dr. Finch found Plaintiff does

not appear to have impairment in "understanding and memory." (AR 465) Regarding "sustained concentration and persistence," Dr. Finch found no impairment in sustained concentration but, based on information obtained during the clinical interview, found Plaintiff "may have difficulty performing activities within a schedule, maintaining regular attendance, and completing a normal workday and workweek without interruptions from psychologically-based symptoms." (*Id.*)

Dr. Finch next addressed "social interaction" and found Plaintiff appears to have mild impairment. (*Id.*) She concluded Plaintiff "may have difficulty working in coordination with or proximity to others without being distracted by them; interacting appropriately with the general public; and getting along with coworkers or peers without distracting them or exhibiting behavioral extremes." (*Id.*) Lastly, regarding "adaptation," Dr. Finch found "no evidence to indicate that [Plaintiff] would have any difficulty adapting to new or unfamiliar situations or environments." (*Id.*)

The ALJ summarized Dr. Finch's psychological evaluation as follows:

> Dr. Finch noted the claimant was cooperative and appeared to put forth good effort. During the mental status exam, the claimant's attention, memory and concentration were adequate and she was able to perform simple instructions. Her reasoning and judgment appeared to be intact. Her short-term and long-term memory appeared unimpaired. Dr. Finch opined that the claimant does not have an impairment in sustained concentration, comprehension or memory. She believes the claimant has a mild impairment in social interactions and does not believe the claimant would have any difficulty adapting to new or unfamiliar situations. The undersigned gives Dr. Finch's opinion great weight, as it is consistent with the treatment records.

(AR 21)

**2. Non-Examining State Agency Reviewer**

Adrianne Gallucci, Psy.D., a non-examining reviewing psychologist, prepared a Mental Residual Functional Capacity Assessment ("MRFCA") and a Psychiatric Review Technique on August 11, 2008. (AR 467-484) Of the twenty mental activities evaluated on the MRFCA, Dr. Gallucci found "no evidence of limitation" in Plaintiff's ability to do seven of them and "not significantly limited" in her ability to do eight others. (AR 467-468). For

7

the remaining five activities, Dr. Garland found Plaintiff "moderately limited." (*Id.*) The most severe assessment, "markedly limited," was not checked by Dr. Gallucci for any of the twenty mental activities, which included activities involving "understanding and memory," "sustained concentration and persistence," "social interaction" and adaptation. (*Id.*).

In the "Functional Capacity Assessment" section of the MRFCA, Dr. Gallucci relied on Dr. Finch's findings. Dr. Gallucci wrote:

Dr. Finch indicates claimant is able to:

1. Remember work-like procedures/locations and understand and remember both simple and detailed instructions.

2. Carry out both simple and detailed instructions, maintain attention and concentration, maintain regular attendance and be punctual within customary tolerances, sustain an ordinary routine without special supervision, work in coordination with or proximity to others without being unduly distracted by them, make simple work-related decisions, and complete a normal workday and workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods.

3. Ask simple questions or request assistance, accept instructions and respond appropriately to criticism from supervisors, and get along with coworkers or peers without distracting them or exhibiting behavioral extremes.

4. Respond appropriately to changes in a routine work setting, be aware of normal hazards and take appropriate precautions, use public transportation, set goals and make plans.

(AR 469)

In the Psychiatric Review Technique, Dr. Gallucci found Plaintiff's activities of daily living are mildly restricted; Plaintiff has moderate difficulties in maintaining social functioning; she has moderate difficulties in maintaining concentration, persistence or pace; and there have been no episodes of decompensation of extended duration. (AR 481) After summarizing the MRFCA and the Psychiatric Review Technique, the ALJ gave "great weight" to Dr. Gallucci's opinions, finding they are consistent with treatment records and the records as a whole. (AR 22)

**3. Discussion**

As noted above, Plaintiff claims the opinions by the two psychologists are "at odds" and the ALJ erred by relying on Dr. Gallucci's opinions and failing to fully consider the limitations set forth in Dr. Finch's assessment. (Doc. 23 at 16)  Specifically, Plaintiff contends the ALJ failed to consider that Dr. Finch opined Plaintiff "may have difficulty performing activities within a schedule, maintaining regular attendance and completing a normal workday and workweek without interruptions from psychologically based symptoms." (*Id.*)  Plaintiff contends Dr. Gallucci, in summarizing Dr. Finch's assessment, inaccurately indicated Plaintiff would be able to perform these activities without any stated difficulties. Plaintiff argues the ALJ should not have relied on Dr. Gallucci's inaccurate findings. Defendant argues in response that contrary to Plaintiff's contention, the psychologists' opinions are not "at odds" and the ALJ properly considered both in determining Plaintiff's RFC. (Doc. 24 at 5-7)

The Court agrees with Defendant that the psychologists' opinions are not inconsistent. Although Dr. Finch stated in her Medical Source Statement that Plaintiff "may have difficulty" with certain activities, nowhere did she say Plaintiff would be unable to perform those activities nor did Dr. Finch specifically identify Plaintiff's ability to perform those activities as "markedly" or "moderately" limited.

Relying on Dr. Finch's Psychological Report and Medical Source Statement, Dr. Gallucci essentially attempted to translate Dr. Finch's language into the language and format of the MRFCA and the Psychiatric Review Technique. Thus, for each of the activities Dr. Finch found Plaintiff "may have difficulty" performing, Dr. Gallucci checked the box for "moderately limited" on the MRFCA form. (*Compare* AR 465 *with* AR 467-468) Similarly, absent any statement to the contrary by Dr. Finch, Dr. Gallucci stated Plaintiff "is able to" perform those and other activities. (*Compare* AR 465 *with* AR 469)

Based on the foregoing, the Court finds Plaintiff has failed to demonstrate that Dr. Gallucci's interpretations of Dr. Finch's opinions are unreasonable to the degree that Dr.

Gallucci's opinions should be disregarded. Although the ALJ does not specifically explain his basis for determining the psychologists' opinions are consistent with one another to which he assigned both "great weight," based on the above analysis, the Court finds the ALJ's determination was a reasonable one. The Court finds no error in the ALJ's reliance on both Dr. Gallucci's and Dr. Finch's opinions regarding Plaintiff's mental limitations pertaining to work.

Plaintiff contends the ALJ also erred by ignoring Dr. Finch's global assessment of functioning ("GAF") score. (Doc. 23 at 18) In the Psychological Report prepared by Dr. Finch, she assigned Plaintiff a GAF score of 42. (AR 464) Citing the *Diagnostic and Statistical Manual of Mental Disorders* at 34, Plaintiff asserts "[a] GAF score below 50 indicates serious impairment, including inability to keep a job." (Doc. 23 at 18)

Defendant argues in response that the ALJ discussed Plaintiff's GAF, stating she consistently had GAF near 65 as reflected in treatment records. (Doc. 24 at 6-7) Defendant contends the ALJ did not err by failing to rely on Dr. Finch's GAF score.

Regarding Plaintiff's GAF, the ALJ stated:

> Mental health records show the claimant's global assessment of functioning (GAF) scores have consistently been near 65 (Exhibit 26F). A GAF in this range denotes some mild symptoms, but generally functioning pretty well, in addition to maintaining some meaningful interpersonal relationships.

(AR 20) The exhibit cited by the ALJ contains 93 pages of Plaintiff's Psychiatric Progress Notes from Phoenix Interfaith Counseling. (AR 609-701) The records show Plaintiff's GAF score was assessed eight times between October 14, 2008 and June 22, 2010. (AR 610, 620, 634, 643, 664, 674, 685 and 698) On six occasions, her GAF score was 65. There was one score of 52 in January 2010 and another score of 60 in April 2010. (*Id.*)

The Court finds Plaintiff has failed to show it was error for the ALJ to rely on Plaintiff's GAF scores from her treatment records rather than the one GAF score from Dr. Finch, which predated the treatment records. Plaintiff cites to no authority, and the Court is aware of none, requiring the ALJ to adopt every finding in an examining psychologist's

10

opinion to which he has assigned "great weight." The Court finds nothing improper about the ALJ's reliance on Plaintiff's GAF scores in two years of treatment notes as opposed to relying on Dr. Finch's one-time assessment that took place prior to Plaintiff's mental health treatment.

As noted above, the ALJ is responsible for resolving conflicts in medical testimony. *Thomas*, 278 F.3d at 956-57. To the extent Dr. Finch's GAF score in June 2008 conflicts with Plaintiff's mental health treatment provider's GAF scores from October 2008 to June 2010, the ALJ reasonably resolved the conflict by relying on the more recent scores over a longer period of time. The Court finds no error in this conclusion.

### B. Discounting of Plaintiff's Symptom Testimony

Plaintiff next argues the ALJ erred by rejecting Plaintiff's symptom testimony without providing clear and convincing reasons for doing so. (Doc. 23 at 19-24) Plaintiff contends that because the ALJ made no finding of malingering, he may not reject such testimony without satisfying this high standard. Defendant argues in response that the ALJ provided legally sufficient reasons for finding Plaintiff's symptom testimony not credible. (Doc. 24 at 8-14)

An ALJ must perform a two-step analysis when determining whether a claimant's testimony regarding subjective pain or symptoms is credible. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-1036 (9th Cir. 2007). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Id.* at 1036 (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (*en banc*). The claimant need only show that her medically determinable impairment could reasonably be expected to produce some degree of the symptom alleged, not "that her impairment could reasonably be expected to cause the severity of the symptom she has alleged." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996). Second, if the claimant satisfies this test, and absent any evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of her symptoms

11

only by offering specific, clear and convincing reasons for doing so." *Id.* at 1281.

Further, to determine whether a claimant's testimony regarding the severity of her symptoms is credible, an ALJ may consider the following: "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." *Smolen*, 80 F.3d at 1284. An ALJ may also consider the claimant's work record, and the observations of treating and examining physicians and other third parties regarding "the nature, onset, duration and frequency of claimant's symptoms, and precipitating and aggravating factors, functional restrictions caused by the symptoms, and the claimant's daily activities." *Id.*

Here, the ALJ found "that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." (AR 21) The ALJ further noted the following regarding Plaintiff's credibility:

> The claimant does not appear to be as limited as she alleges, as her treating physicians have made notes of her physical and mental abilities. In July 2007, one of the claimant's physicians observed she was able to get up from a low stool as well as squat down to get up without supporting herself with her hands (Exhibit 29F). Visits with her primary care physician in March, April and July 2010 proved the claimant was able to get up and sit down without using the arm of a chair and no reduced range of motion was observed (Exhibit 32F). Records also indicate the claimant goes on outings with individuals from her pain management group, as often as weekly (Exhibit 26F). Furthermore, the claimant started homeschooling her daughter around November 2009 (Exhibit 26F). In addition, the claimant's mental health records show several times the claimant has reported, "doing well emotionally" (Exhibit 26F page 2, 36). Although the claimant regularly uses a cane, an assistive device has never been prescribed to the claimant. This information leads one to believe the claimant is not as limited, physically or mentally, as she has alleged. This information also lessens the claimant's credibility.

(AR 20)

Among other limitations, Plaintiff testified at the hearing before the ALJ that she can

only lift three pounds with her right hand and six pounds with her left hand. (AR 48-49) She testified she can only sit for seven to ten minutes and stand for ten or fifteen minutes. (AR 49) Plaintiff said she can only walk a block before needing to stop. (AR 49-50) She further testified that on a typical day, during normal working hours of nine to five, she spends six of those eight hours lying down to get relief from her symptoms. (AR 55)

As noted above, by finding Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, and due to the absence of evidence of malingering, the ALJ was required to provide clear and convincing reasons for discounting Plaintiff's symptom testimony. *See Smolen*, 80 F.3d 1281. The Court finds the ALJ's reasons for rejecting Plaintiff's symptom testimony meet that standard. The ALJ cited specific treatment records suggesting Plaintiff is stronger and more mobile than her hearing testimony indicated. The ALJ identified information in the record regarding Plaintiff's activities, including weekly outings and homeschooling her daughter, that suggest her activity level is greater than her testimony claimed. Even if the evidence regarding Plaintiff's participation in such activities is somewhat equivocal, the ALJ properly considered those activities in finding Plaintiff's subjective complaints were not credible to the extent claimed. *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (stating that "[i]t is true that [the claimant's] testimony was somewhat equivocal about how regularly she was able to keep up with all of these activities, and the ALJ's interpretation of her testimony may not be the only reasonable one. But it is still a reasonable interpretation and is supported by substantial evidence; thus, it is not our role to second guess it."). Additionally, the ALJ cited specific examples from Plaintiff's mental health treatment records that indicate her mental health limitations are not as debilitating as she claims. The Court finds the ALJ's reasons for discounting Plaintiff's symptom testimony satisfy the clear and convincing standard. The Court, therefore, finds no error.

**V. Conclusion**

Based on the foregoing analysis, the Court finds the Commissioner's decision is

supported by substantial evidence and is free from harmful legal error.

Accordingly,

**IT IS ORDERED** that the decision of the Commissioner is **AFFIRMED**. The Clerk of Court is directed to enter judgment accordingly and terminate this appeal.

Dated this 23rd day of September, 2013.

*Lawrence O. Anderson*
Lawrence O. Anderson
United States Magistrate Judge